UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TODD A. VAN NATTA, | ) | |
| OKSANA INTERNATIONAL LLC, | ) | No. 1:10-cv-01220-MJD-LJM |
| VAN NATTA ASSET MANAGEMENT, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the court on Plaintiff's Motion for Summary Judgment [Plaintiff's Motion for Summary Judgment, *Grant v. Van Natta, et. al*, No. 1:10-01220-MJD-LJM (S.D. Ind. July 13, 2012), ECF No. 113 (hereinafter Dkt. 113)], filed on July 13, 2012. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

This case involves claims for fraud, breach of contract, conversion, and securities violations brought by Plaintiff Mark Grant against Defendants Todd A. Van Natta, Oksana International LLC ("Oksana International" or the "Company"), and Van Natta Asset Management, LLC. Plaintiff invested $200,000 for a 50% ownership interest in Oksana International – a company in which Defendant Todd Van Natta owned the other 50% interest. Plaintiff alleges that Mr. Van Natta mislead him into believing that Oksana International had invested in the purchase of a Jamaican hotel and that the Company had purchased an internet

dating website called www.oksanalove.com.   Mr. Van Natta also promised Mr. Grant employment and offered him an Employment Agreement.

After Mr. Grant gave Mr. Van Natta his $200,000 investment, he learned there was no purchase agreement for the Jamaican hotel and that Oksana International had not purchased www.oksanalove.com.   Mr. Grant claims that he has not been paid under the Employment Contract, has not received information about Oksana International, and does not know the whereabouts of his $200,000 investment.

Default was entered against Defendants Oksana International and Van Natta Asset Management on May 30, 2012.   On July 13, 2012, Mr. Grant filed a Motion for Summary Judgment with respect to all of his pending claims against Defendant Todd A. Van Natta.   Mr. Van Natta has failed to file any substantive response to Mr. Grant's Motion for Summary Judgment and did not submit any evidence in opposition thereto.[1]

**Inadmissible Statements Contained in Mr. Grant's Affidavit.**

Because no response to Mr. Grant's motion was filed, that motion is subject to summary ruling.   S.D. Ind. L.R. 7-1(c)(4).   This does not alter the fact that, in order to be granted, Mr. Grant's motion and supporting facts must be legally sufficient on their face to justify the relief sought.

The Court must first consider whether the evidence submitted by Mr. Grant is admissible and properly before the Court.   "Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."   *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted).   In support of his Motion for Summary Judgment, Mr. Grant submitted an affidavit as Exhibit A, dated October 5, 2010.

---

[1] On October 1, 2012, Mr. Van Natta filed a motion seeking an extension of time to respond to Mr. Grant's Motion for Summary Judgment, which motion was denied by separate order.   [Dkt. 120.]

[Affidavit of Mark Grant, *Grant v. Van Natta, et. al*, No. 1:10-01220-MJD-LJM (S.D. Ind. July 13, 2012), ECF No. 114 (hereinafter "Grant Affidavit").]  Several of the statements included in the Grant Affidavit are inadmissible because they violate the best evidence rule, codified as Fed. R. Evid. 1002, contain inadmissible hearsay, or are inadmissible lay witness opinions.

> Federal Rule of Evidence 1002, the "best evidence rule", provides:

> An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

Fed. R. Evid. 1002.  "Several rationale underlie the best evidence rule." *Middleby Corp. v. Hussmann Corp.*, No. 90 C 2744, 1993 WL 151290, at \*14 (N.D. Ill. May 7, 1993) (citing 2 *McCormick on Evid.* § 231, at 62-63 (Strong ed. 1992)).  "The rule discourages fraud; it reduces problems with inaccurate reproductions; it minimizes the particularly problematic inaccuracy encountered when oral testimony purports to recount the terms of a writing from memory." *Id.* These concerns exist here where Mr. Grant is attempting to testify to statements allegedly made by Mr. Van Natta in email messages to Mr. Grant, yet Mr. Grant has not submitted these emails in support of his Motion for Summary Judgment.  Mr. Grant does not provide any explanation or exception that would excuse the required introduction of the original emails.  *See* Fed. R. Evid. 1004.

Mr. Grant submitted only one email from Mr. Van Natta to Mr. Grant – as Exhibit A to the Grant Affidavit.  Yet, the Grant Affidavit contains several statements that Mr. Van Natta made various misrepresentations via email communication to Mr. Grant.  For example, Mr. Grant alleges that:  "[i]n Mr. Van Natta's many e-mails to me about this investment opportunity, Mr. Van Natta repeatedly referenced a name associated with a website of which I was previously a client."  Grant Aff. ¶ 6; *see also id.* ¶ 7 ("Mr. Van Natta sent multiple interstate e-mails and text messages to me in which he continued to offer me a 'business investment – from Oksana.'").

3

Although the email dated June 1, 2010, at 10:11 AM, bears the subject line "business investment – from oksana," this is the only email in evidence, not "many emails" and no "repeated reference" to the name "Oksana" has been shown by the documentary evidence submitted by Mr. Grant.

Similarly, Mr. Grant claims that "[i]n these e-mails, Mr. Van Natta made multiple pitches to me about the opportunities presented by my investment in the Company [Oksana International]. Mr. Van Natta made affirmative representations to me in his e-mail exchanges in which he touted the strengths of the Company's investments, business holdings and financial condition." *Id.* ¶ 8. Yet, in the June 1, 2010 email, Mr. Van Natta does not refer to Oksana International and does not mention any strengths of the Company, its financial condition, or any holdings of the business. According to paragraph 4 of the Grant Affidavit, Oksana International was not formed until three days later, on June 4, 2010. *See id.* ¶ 4.

Moreover, Mr. Grant states that "Mr. Van Natta also claimed that the Company had invested in a Jamaican hotel named the 'Blue Cave Castle,' the purchase of which was already under contract, with $781,800.00 of the Company's money already held in an escrow account for the benefit of the purchase. Mr. Van Natta sent me, via interstate e-mail, a copy of the 'purchase agreement' as well as a 'receipt' for the money held in escrow." *Id.* ¶ 9. Mr. Van Natta's June 1, 2010 email does not state that Oksana International has invested in Blue Cave Castle, and he does not state that Oksana International had provided $781,800, which was being held in escrow.[2] As a result, the Court strikes paragraphs 6, 7 (the first sentence), 8, and 9 (first sentence) of the Grant Affidavit because Mr. Grant attempts to prove the contents of a writing without introducing the writing in contravention of Fed. R. Evid. 1002.

---

[2] Mr. Grant also has not submitted the purchase agreement or receipt for the money purportedly held in escrow for the purchase of Blue Cave Castle. However, because Mr. Grant did not seek to submit into evidence the terms of these writings, the Court does not strike this sentence of paragraph 9 of the Grant Affidavit.

The Grant Affidavit also includes inadmissible statements of hearsay that cannot be considered for purposes of determining his Motion for Summary Judgment.  Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, . . . ." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (citations omitted).  In paragraph 23 of his affidavit, Mr. Grant states that the owner of the Blue Cave Castle "answering the publicly available telephone listing on the property, informed Mr. Barry Wormser [one of Mr. Grant's attorneys] that she was unfamiliar with Mr. Van Natta, had never entered into a purchase agreement on the property, and even stated that she had no interest in selling the property whatsoever."  Grant Aff. ¶ 23.  Mr. Grant's statement in paragraph 23 of his affidavit contains two levels of inadmissible hearsay.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Gunville*, 583 F.3d at 985 (citing Fed. R. Evid. 801(c)).  Here, Mr. Grant is trying to prove that the owner of the Blue Cave Castle never entered into a purchase agreement to sell the property, did not know Mr. Van Natta, and does not wish to sell the property.  Mr. Grant attempts to do this by stating that the owner of Blue Cave Castle communicated such to his lawyer, and that Mr. Grant's lawyer in turn told him this fact to be admitted into evidence.  Mr. Grant has no personal knowledge of the statement he seeks to prove the truth of and cannot testify to those statements without violating Fed. R. Evid. 802.  Federal Rule of Evidence 802 states that "[h]earsay is not admissible unless any of the following provides otherwise:  a federal statute; these rules; or other rules prescribed

5

Case 1:10-cv-01220-MJD-LJM   Document 121   Filed 02/07/13   Page 6 of 28 PageID #: 574

by the Supreme Court."[3]  Consequently, the Court strikes the second sentence of paragraph 23

and paragraph 24 of the Grant Affidavit.

Paragraph 21 of Mr. Grant's Affidavit is inadmissible because it is not based on personal

knowledge and provides an inadmissible lay opinion.  Mr. Grant states that "Mr. Van Natta knew

there were no 'Sellers' of the Blue Cave Castle, and Mr. Van Natta knew that $781,800.00 of

Company money was not held in escrow for the purchase of the Blue Cave Castle hotel."  Grant

Aff. ¶ 21.  Mr. Grant has no personal knowledge of what Mr. Van Natta knew or did not know.

At best, Mr. Grant's statement is an opinion of a lay witness pursuant to Fed. R. Evid.

701; however, Mr. Grant fails to provide the basis for his opinion.  "Since neither Rule 701 nor

Rule 704(a) limits the subject matter of lay opinion testimony, there is no theoretical prohibition

against allowing lay witnesses to give their opinions as to the mental states of others."  *U.S. v.

Rea*, 958 F.2d 1206, 1214-15 (2d Cir. 1992) (citing 3 J. Weinstein & M. Berger, *Weinstein's

Evid.* ¶ 701 [02], at 701-19 to 701-21 (1991)).  "However, when a witness has not identified the

objective bases for his opinion, the proffered opinion fails completely to meet the requirements

of FRE 701, first because there is no way for the court to assess whether it is rationally based on

the witness's perceptions, and second because the opinion does not help the jury but only tells it

in a conclusory fashion what it should find."  33A Fed. Proc., L. Ed. § 80:206 (2012) (citing *Rea*,

958 F.2d 1206); *see* Fed. R. Evid. 701 (limiting admissible lay opinions to those that are "(a)

rationally based on the witness's perception; (b) helpful to clearly understanding the witness's

testimony or to determining a fact in issue; . . .").  Mr. Grant has not provided the basis for his

opinion that Mr. Van Natta knew there were no sellers of the Blue Cave Castle or that Oksana

International had not placed $781,000 in escrow for the purchase of that hotel.  Consequently,

---

[3] Although several exceptions to the hearsay rule exist in Fed. R. Evid. 803 and 804, Mr. Grant has not
shown that any exception applies and the Court finds that none of those exceptions apply here.

the Court STRIKES paragraph 21 of Mr. Grant's affidavit as an inadmissible lay witness opinion.

**Undisputed Material Facts.**

The undisputed material facts are as follows:  On or about June 1, 2010, Mr. Van Natta contacted Mr. Grant via e-mail about an investment opportunity.  Mr. Van Natta formed a company called Oksana International LLC, whose Articles of Organization were filed with the Indiana Secretary of State on June 4, 2010.  At that time, Mr. Van Natta was the sole member of Oksana International.  In June and July 2010, Mr. Van Natta represented to Mr. Grant that Oksana International purchased an internet dating service website called www.oksanalove.com.

On June 27, 2010, Mr. Grant gave Mr. Van Natta $200,000 in exchange for a 50% ownership interest in Oksana International.  After Mr. Grant invested in Oksana International, Mr. Van Natta became unwilling to share information with Mr. Grant about the Company.  Specifically, Mr. Van Natta refused to provide Mr. Grant with contact information for the purported sellers of the Jamaican hotel property, or the location and contact information of the money purportedly held in escrow.  The undisputed material facts further show that Mr. Van Natta refused to provide any information to Mr. Grant about Oksana International, and only spoke in vague generalities.  After Mr. Grant invested in Oksana International, Mr. Van Natta also stopped talking about the website he claimed Oksana International owned, www.oksanalove.com.  On or about July 8, 2010, Oksana Boichenko sent an email to Mr. Grant in response to Mr. Grant's statement that he owned her website (www.oksanalove.com).  In that email, Ms. Boichenko stated that she did not issue shares of her corporation to anybody and refuted Mr. Grant's position that he owned her website.

7

Mr. Van Natta promised Mr. Grant full time employment.   Mr. Grant executed an Employment Agreement on or about June 27, 2010.

## DISCUSSION

### I.  Standard of Review.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." *Id.*  In ruling on a motion for summary judgment, the court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

Federal Rule of Civil Procedure 56(e) contemplates the situation where a party fails to respond to an opposing party's motion for summary judgment.  That rule states:

> **(e)  Failing to Properly Support or Address a Fact.**  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "[E]ntry of a summary judgment motion as unopposed does not automatically give rise to a grant to summary judgment.  Instead 'the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.'" *Aguiar-Carrasquillo v. Agosto-*

*Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (citing *Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir. 1992) (citation and internal quotation marks omitted)).  Here, although Mr. Van Natta failed to oppose Mr. Grant's Motion for Summary Judgment, the Court must analyze each of Plaintiff's claims to determine whether judgment as a matter of law would be legally appropriate.

**II.   Legal Discussion.**

      **A.   Actual Fraud, Constructive Fraud, and Deception.**

            **1.   Actual Fraud.**

Mr. Grant claims that Mr. Van Natta defrauded him by making actual misrepresentations about Oksana International upon which he relied when making a $200,000 investment in the Company.  "To sustain an action for fraud, it must be proven that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it or else recklessly made and that another party did in fact rely on the representation and was induced thereby to act to his detriment."  *Ruff v. Charter Behavioral Health Sys. of Nw. Ind., Inc.*, 699 N.E.2d 1171, 1173 (Ind. Ct. App. 1998) (citation omitted).  "Fraud need not be proven by direct or positive evidence; it may be proven by circumstantial evidence, provided there are facts from which the existence of all the elements can be reasonably inferred."  *Id.* at 1174 (citation omitted).

Mr. Grant alleges that Mr. Van Natta made three misrepresentations upon which he relied to his detriment when investing $200,000 in Oksana International – (1) that Oksana International had entered into a legitimate purchase agreement to purchase Blue Cave Castle; (2) that $781,800 was being held in escrow for the purchase of Blue Cave Castle; and (3) that Oksana International owned www.oksanalove.com.  Plaintiff's Memo in Support of Plaintiff's Motion

For Summary Judgment at 2, *Grant v. Van Natta, et al.*, No. 1:10-cv-1220- MJD-LJM (S.D. Ind. July 13, 2012) ECF No. 114 [hereinafter Dkt. 114].  As seen above, the Court has stricken Mr. Grant's statements that Mr. Van Natta made misrepresentations (1) and (2) because Mr. Grant did not satisfy Fed. R. Evid. 1002.  As a result, the only misrepresentation upon which Mr. Grant's fraud claim can be based for purposes of his summary judgment motion is misrepresentation (3) that Oksana International owned the website www.oksanalove.com.

Fraud requires not only that Mr. Grant show that Mr. Van Natta made a material misrepresentation, but that Mr. Grant justifiably relied upon that misrepresentation to his detriment.  "The element of reliance has two distinct parts:  the fact of reliance and the right of reliance." *Ruff*, 699 N.E.2d at 1174 (citation omitted).  The fact of reliance is undisputed.  Grant Aff. ¶ 13 ("I [] relied upon Mr. Van Natta's representations and acted in reliance upon those representations.").  "The right of reliance is tightly bound up with the duty of a representee to be diligent in safeguarding his interests." *Ruff*, 699 N.E.2d at 1174-75 (citation omitted).  "The legal obligation that a person exercise the common sense and judgment of which he is possessed is a practical limitation on the actionability of various representations.  Where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment." *Id.*

As is discussed in greater detail below, Mr. Grant has submitted no evidence of a fiduciary relationship that existed between he and Mr. Van Natta at the time this alleged misrepresentation and reliance occurred.  Moreover, Mr. Grant has submitted no evidence of due diligence with respect to Oksana International's ownership of www.oksanalove.com.  Mr. Grant states in his affidavit that Mr. Van Natta used Ms. Biochenko's name, Oksana, "to immediately develop a sense of trust" because Mr. Grant was previously a client of www.oksanalove.com.

10

Grant Aff. ¶¶ 6, 14.  Despite his familiarity with the owner of the website allegedly purchased by Oksana International (and his apparent unfamiliarity with Mr. Van Natta),[4] Mr. Grant does not appear to have done any investigation as to the sale of www.oksanalove.com before investing what he describes as his "life savings" in Oksana International.  Because no evidence has been presented that Mr. Grant acted to protect his own rights, the Court cannot find that Mr. Grant reasonably relied on Mr. Van Natta's misrepresentation that Oksana International owned www.oksanalove.com.  The reasonable inference from these facts construed in favor of the non-movant, Mr. Van Natta, is that Mr. Grant had no right to rely on Mr. Van Natta's misrepresentation without performing some due diligence.  At best, a dispute of material fact exists as to whether Mr. Grant had the right to rely on Mr. Van Natta's misrepresentations that Oksana International owned www.oksanalove.com.  The Court DENIES Plaintiff's Motion for Summary Judgment with respect to Actual Fraud contained in Count I of the Complaint.

### 2.   Constructive Fraud.

The result is the same for Plaintiff's constructive fraud claim.  Mr. Grant alleges that because he and Mr. Van Natta were prospective and actual business partners in a closely held company, Mr. Van Natta owed Mr. Grant a fiduciary duty that was breached by Mr. Van Natta's misrepresentations related to Oksana International.  The elements of constructive fraud are:  (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or

---

[4] It is unclear whether Mr. Grant knew Oksana Boichenko prior to his interactions with Mr. Van Natta; however, based on the limited record that has been presented to the Court, the reasonable inference is that Ms. Boichenko is someone that Mr. Grant knew.  Specifically, Ms. Boichenko sent an email directly to Mr. Grant, referring to him as "Mark," on July 8, 2010 to which Mr. Grant responded.  Moreover, Mr. Grant accuses Mr. Van Natta of referencing "a name associated with a website of which I was previously a client" as a way to develop trust.  The reasonable inferences from these statements is that Mr. Grant knew Ms. Boichenko.  At a minimum, another person with whom Mr. Grant was familiar existed to provide information about the sale of www.oksanalove.com, yet no evidence has been presented that Mr. Grant communicated with her about Oksana International's purchase of the website *prior to* investing in the Company.

existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) (citation omitted).

"In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them." *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994) (citation omitted). "The existence of a duty for constructive fraud may arise in one of two ways: by virtue of the existence of a fiduciary relationship, or, in the case where there is a buyer and seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Am. Heritage Banco, Inc.*, 928 N.E.2d at 247.

Mr. Grant has made no allegation that a confidential relationship existed between he and Mr. Van Natta that would raise a presumption of trust and confidence of the subordinate party and a corresponding influence of the dominant party on the other, such as attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, or parent and child. *See Lucas v. Frazee*, 471 N.E.2d 1163, 1166-67 (Ind. Ct. App. 1984) (identifying common legal and domestic relationships that raise a presumption of trust and confidence to impose a presumption of undue influence by the dominant party). Instead, Mr. Grant and Mr. Van Natta were buyer-and-seller in an arms-length transaction at the time the alleged misrepresentation was made. Mr. Van Natta was selling a 50% ownership interest in Oksana International to Mr. Grant. According to Indiana law, a fiduciary relationship may not be predicated on an arms' length transaction. *Mullen*, 643 N.E.2d at 401. No fiduciary relationship exists for "prospective" business partners as Mr. Grant urges this Court to find.

"A constructive fraud may arise in a buyer/seller relationship when:  (1) a seller makes unqualified statements to induce another to make a purchase; (2) the buyer relies upon the statements; and (3) the seller has professed to the buyer that he has knowledge of the truth of those statements."  *Am. Heritage Banco, Inc.*, 928 N.E.2d at 247 (citation omitted).  Yet, "every buyer/seller relationship likely involves a party who possesses at least some knowledge not possessed by the other, but that fact alone does not mean that one party enjoys a position of superiority over the other so as to create a special duty and right of reliance."  *Id.* at 247.  "[C]onstructive fraud is a theory of recovery founded in equity.  While the law is designed to protect the weak and credulous from the wiles and stratagems of the artful and cunning, it will not protect those who stand mentally on equal footing and in no fiduciary relation, if they fail to exercise common sense and judgment."  *Id.* at 248 (internal quotation marks and citations omitted).  In *American Heritage Banco, Inc.*, the plaintiffs "failed to exercise common sense and judgment … when they declined to conduct any investigation whatsoever as to the propriety of the [] transaction."  *Id.*  The Court held that no special relationship existed and no constructive fraud existed in that buyer/seller circumstance.  *Id.*

Here, like with actual fraud, assuming Mr. Van Natta made misrepresentations as to Oksana International's ownership of www.oksanalove.com and Mr. Grant relied on those misrepresentations, those facts alone do not demonstrate that Mr. Van Natta enjoyed a position of superiority over Mr. Grant which created a special duty and right of reliance.  Mr. Grant has submitted no evidence of any investigation regarding Oksana International's alleged purchase of www.oksanalove.com, despite knowing the owner of the website.  No evidence exists that Mr. Grant and Mr. Van Natta were not on equal footing or that Mr. Grant did not have access to information about the sale of www.oksanalove.com.  As a result, the Court finds that based on

the undisputed material facts submitted, no relationship existed between Mr. Grant and Mr. Van Natta necessary to create the duty requisite for a constructive fraud claim.  The Court DENIES Plaintiff's Motion for Summary Judgment with respect to Count II of his Complaint.

### 3.  Deception.

Mr. Grant has asserted a claim for deception pursuant to Ind. Code § 35-43-5-3(a)(2). That section provides:  "A person who:  . . . (2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment or an educational opportunity; . . . commits deception, a Class A misdemeanor."  Ind. Code § 35-43-5-3(a)(2).  Mr. Grant has not submitted any evidence consistent with the best evidence rule, Fed. R. Evid. 1002, that any of the alleged misstatements were made in writing.  Because Ind. Code § 35-43-5-3(a)(2) expressly requires the misleading statement to be made in writing and no such writing has been submitted into evidence, the Court DENIES Plaintiff's motion for summary judgment with respect to his claim for Deception in Count VII of the Complaint.

### B.  Breach of Fiduciary Duty and Accounting.

### 1.  Breach of Fiduciary Duty.

Mr. Grant purchased a 50% share of Oksana International LLC for $200,000.  Mr. Van Natta holds the other 50% interest in Oksana International.  The undisputed material facts show that Mr. Grant and Mr. Van Natta are the sole shareholders of Oksana International.  [Complaint at ¶ 63, *Grant v. Van Natta, et. al*, No. 1:10-01220-MJD-LJM (S.D. Ind. Sept. 27, 2010), ECF No. 1 (hereinafter Dkt. 1); Answer to the Complaint for Damages at ¶ 63, *Grant v. Van Natta, et. al*, No. 1:10-01220-MJD-LJM (S.D. Ind. Dec. 9, 2010), ECF No. 16 (hereinafter Dkt. 16).]  It is undisputed that "Mr. Van Natta owed Mr. Grant a fiduciary duty and a duty to avoid self-dealing

as a result of their business relationship in a closely held entity." [Dkt. 1 at ¶ 63; Dkt. 16 at ¶ 63.]

Mr. Grant has asserted a breach of fiduciary duty claim against Mr. Van Natta based on their relationship as shareholders in a closely-held corporation. Dkt. 114 at 3 (citing *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240-41 (Ind. 2001)). However, Mr. Grant complains about conduct of Mr. Van Natta that occurred *before* he and Mr. Van Natta were shareholders in Oksana International, i.e., before Mr. Van Natta owed Mr. Grant any fiduciary duties as members of a closely-held corporation. For example, Mr. Grant complains that Mr. Van Natta "failed to disclose that Grant's investment was not really earmarked for investment in Blue Cave Castle hotel, www.oksanalove.com, and a reality dating show." Dkt. 114 at 3. These alleged omissions occurred *prior* to Mr. Grant being a 50% shareholder in Oksana International. Misstatements that occurred *prior* to Mr. Grant being a 50% shareholder of Oksana International cannot be the basis of a claim for breach of fiduciary duty based on the parties' business relationship.

Mr. Grant also claims that Mr. Van Natta breached a fiduciary duty to him by misappropriating Mr. Grant's $200,000 investment in Oksana International. No evidence has been submitted that Mr. Van Natta engaged in self-dealing or that he misappropriated Mr. Grant's $200,000 investment in the Company. To the contrary, the undisputed material facts show that Mr. Grant "is still in the dark as to how his $200,000.00 investment was spent by Defendants." Dkt. 114 at 4. Mr. Grant has presented no evidence upon which this Court can enter summary judgment that Mr. Van Natta breached a fiduciary duty as a shareholder of a closely-held corporation by misappropriating Mr. Grant's $200,000.00 investment in Oksana International.

15

The Indiana Business Flexibility Act includes several requirements of a limited liability company and its members to provide information about the company to other members consistent with Indiana common law. Members of a limited liability company owe fiduciary duties to one another similar to those of shareholders in a closely-held corporation. "The fiduciary must deal fairly, honestly, and openly with his corporation and fellow stockholders. He must not be distracted from the performance of his official duties by personal interest." *Purcell v. So. Hills Invest., LLC*, 847 N.E.2d 991, 997 (Ind. Ct. App. 2006) (citing *G&N Aircraft, Inc.*, 743 N.E.2d at 240). Specifically, members of a limited liability company "shall give to the extent the circumstances allow just, reasonable, true, and full information of all things affecting the members to any member . . . upon reasonable demand for any purpose reasonably related to a member's interest as a member of the limited liability company." Ind. Code § 23-18-4-8(c).

The undisputed material facts show that Mr. Grant was a 50% owner of Oksana International while Mr. Van Natta held the other 50% interest. [Dkt. 1 at ¶ 16; Dkt. 16 at ¶ 16.] At that time, Mr. Van Natta refused to provide Mr. Grant with "contact information for the purported 'Sellers' of the Jamaican hotel property, or the location and contact information of the money purportedly held in escrow." Grant Aff. ¶ 18. The undisputed material facts further show that Mr. Van Natta "refused to provide any information to [Mr. Grant] about [Oksana International], and only spoke in vague generalities." *Id.* ¶ 22. Based on the these undisputed facts, Mr. Van Natta breached a fiduciary obligation to Mr. Grant – the only other member Oksana International – by failing to provide information related to Oksana International's operations after Mr. Grant became a 50% member. Mr. Van Natta failed to provide full information of "things affecting" the other member of Oksana International upon reasonable demand in violation of Ind. Code § 23-18-4-8(c).

Although Mr. Grant has proven a technical violation of Ind. Code § 23-18-4-8(c), the statute does not provide for monetary damages for such a violation. Even so, Mr. Grant has not provided any evidence of damages proximately caused by Mr. Van Natta's failure to comply with Ind. Code § 23-18-4-8(c). Additionally, Mr. Grant has not requested any injunctive relief. Because Mr. Grant has not proven that he is entitled to any monetary damages for Mr. Van Natta's failure to provide information related to Oksana International's operations after Mr. Grant became a 50% member, and Mr. Grant has not sought any injunctive relief, the Court DENIES summary judgment as to Count IV of Plaintiff's Complaint.

### 2.    Accounting.

Mr. Grant seeks an accounting from all defendants that is unlimited in time and scope. Mr. Grant's request for an accounting is overly broad and lacking in specificity. "Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate to order an accounting." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) (citing *Netisingha v. End of the Line, Inc.*, 437 N.E.2d 857, 859 (Ill. Ct. App. 1982)); *see also Spolnik v. Guardian Life Ins. Co. of Am.*, 94 F. Supp. 2d 998, 1002 (S.D. Ind. 2000) ("An accounting is a suit in equity governed by equitable principles and addressed to the sound discretion of the trial court.") (quoting *Hammes v. Frank*, 579 N.E.2d 1348, 1355 (Ind. Ct. App. 1991)). The corporate defendants in this case, Oksana International LLC and Van Natta Asset Management, LLC, are in default. As a result, Plaintiff's Motion for Summary Judgment only pertains to Defendant Todd Van Natta.[5]

---

[5] Indiana Code § 23-18-4-2(b), cited by Mr. Grant as a basis for seeking an accounting, requires members to account to the LLC, not to individual members. As a result, even if Oksana International and Van Natta Asset Management had not been defaulted, a claim for accounting would not be appropriately sought by Mr. Grant personally.

Although accountings may be warranted to strike a balance between parties in a fiduciary relationship, *see Atwood v. Prairie Village, Inc.*, 401 N.E.2d 97, 100 (Ind. Ct. App. 1980), here, there is no evidence that Mr. Van Natta personally misappropriated Mr. Grant's $200,000 or that discovery in this case could not explain the whereabouts of his investment.  The timeline presented by Mr. Grant describes that he suspected something was awry with Oksana International almost immediately after he provided Mr. Van Natta with his $200,000 investment. This is not a case where it is unclear the amount of profits Mr. Grant should have received or the amount of profits generated by the Company at a certain time.  Rather, this is a question of whether Mr. Grant's investment was properly deposited in the Company.

"A court may refuse to award an equitable accounting to a party who has an adequate remedy at law." *First Commodity Traders, Inc.*, 766 F.2d at 1011.  Here, a return of Mr. Grant's investment of $200,000 would provide an adequate remedy at law.  No evidence or argument has been presented to show that Mr. Grant is entitled to something more than his initial investment in Oksana International (and Mr. Grant's actual damages requested in summary judgment is limited to his $200,000 investment).  As a result, if Mr. Grant proves he is entitled to a return of his full investment via one of his nine claims against the three defendants, he has an adequate remedy at law.  Mr. Grant has not done so here.

Because an adequate remedy at law exists and no evidence has been presented that discovery in this case will not explain the whereabouts of Mr. Grant's $200,000 investment, the Court DENIES Plaintiff's Motion for Summary Judgment with respect to his request for an accounting as to Mr. Van Natta contained in Count IX of Plaintiff's Complaint.

C.       **Tortuous and Criminal Conversion**

Mr. Grant seeks to hold Mr. Van Natta liable for tortuous and criminal conversion.[6]  "To constitute the tort of conversion, there must be an appropriation of the personal property of another."  *Stevens v. Butler*, 639 N.E.2d 662, 666 (Ind. Ct. App. 1994) (citation omitted).  Mr. Grant alleges that Mr. Van Natta is liable for converting "$200,000.00 of Grant's personal money."  Money is a unique property with respect to claims for conversion because it is almost always completely fungible.  As a result, "special legal rules apply when one seeks the return of money under a theory of conversion.  In general, money is an intangible and therefore is not subject to a claim for conversion."  *Kentuckiana Healthcare v. Fourth St. Solutions, LLC*, No. 4:04-cv-00022-DFH-WGH, 2007 WL 968754, at *4 (S.D. Ind. Mar. 22, 2007) (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (applying Illinois law)).  "An exception to this general rule applies when a plaintiff can prove that the defendant converted specifically segregated or specifically identifiable funds."  *Id.* (citing *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (applying Illinois law)).  The exception exists because segregated or identified money begins to take on properties of an ordinary chattel that can be the basis of a conversion claim.  Under Indiana law, "[a]lthough money may be the subject of an action for conversion, it must be capable of being identified as a special chattel."  *Stevens*, 639 N.E.2d at 666 (citing *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986)).  "The money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose."  *Id.* (citing *Kopis*, 498 N.E.2d at 1270).

The undisputed facts show that Grant paid $200,000 for a 50% ownership interest in Oksana International.  Grant Aff.  ¶¶ 5, 11.  No evidence has been submitted that Mr. Grant's

---

[6] Again, Mr. Grant appears to direct his motion for summary judgment against all three defendants; however, an entry of default has been entered against Oksana International and Van Natta Asset Management, and thus, the Court will only address Plaintiff's claim against Defendant Todd Van Natta.

money was to be escrowed or segregated for some specific purpose.  The undisputed facts presented by Mr. Grant show the opposite to be true – that Mr. Grant's money was to be used to purchase a 50% interest in a limited liability company as an investment in that company.[7]

This situation is more analogous to the Indiana real estate cases of *Kopis* and *Stevens*, where the Indiana Court of Appeals found that no action for conversion existed where the money at issue was not segregated or earmarked in such a way to give it chattel-like properties.  In *Kopis*, the seller of real estate refused to return the buyer's deposit when the deal fell through; however, the money had not been segregated or placed in an escrow account.  Instead, it was commingled with other accounts.  Although the seller was legally obligated to repay the money, a claim for conversion did not exist because nothing in the parties' agreement required a return of the "specific" deposit monies that were paid.  *Kopis*, 498 N.E.2d at 1270.  Likewise, in *Stevens*, the real estate broker commingled the potential buyers' earnest money deposits with other funds.  The Indiana Court of Appeals stated that "[w]ithout a more specific identification of the funds to be returned and without a clearer statement of the parties' intention that the funds be separated in some manner, the defendants' refusal to return the deposit was a failure to pay a debt which generally does not support a finding of conversion."  *Stevens*, 639 N.E.2d at 667.  The same is true here where no evidence has been presented that the parties intended to segregate Mr. Grant's money, but rather, it was intended to be commingled with the assets of Oksana International.  *See contra Midland-Guardian Co. v. United Consumers Club, Inc.*, 502 N.E.2d

---

[7] Although Mr. Grant states on page 3 of his Motion with respect to his claim for breach of fiduciary duty and accounting that "Van Natta failed to disclose that Grant's investment was not really earmarked for investment in Blue Cave Castle hotel, www.oksanalove.com, and a reality dating show," no evidence has been submitted that this was the parties' intent.  At best, Mr. Grant's arguments on page 3 could be construed to create a question of fact which would also preclude an entry of summary judgment because he has stated both that he was generally investing in the Company and that Mr. Van Natta failed to disclose that the "investment" was not "earmarked" for certain purchases.

1354 (Ind. Ct. App. 1987) (finding conversion where Midland exercised unauthorized control over funds in a segregated bank account).

Because the undisputed material facts show that Mr. Grant's $200,000 was to be used to purchase a 50% share of Oksana International and no evidence has been presented that the parties intended to segregate or somehow earmark Mr. Grant's $200,000, the Court DENIES Plaintiff's request for summary judgment with respect to tortuous conversion in Count V of Plaintiff's Complaint.

Mr. Grant also seeks summary judgment on his claim for Criminal Conversion.  Criminal conversion is based on Ind. Code § 35-43-4-3(a) which states:  "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."  The difference between tortuous conversion and criminal conversion is intent.  Mens rea is not an element of tortious conversion but is required for criminal conversion.  *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010) (citing *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995)).  For the money at issue to qualify as "property" to be converted, it must be segregated as separate chattel.  As a result, because the undisputed material facts show that Mr. Grant's money was intended to purchase a 50% ownership interest in Oksana International and no evidence has been submitted to show that Mr. Grant's money was to be segregated for a specific purpose, the Court DENIES Plaintiff's request for summary judgment on his claim for criminal conversion in Count VI of the Complaint.

### D.    Violations of Indiana's Securities Law – Misrepresentation.

Plaintiff seeks summary judgment on its claim for Violation of Indiana's Securities Law. Plaintiff alleges that Mr. Van Natta made false representations and failed to disclose material

facts in connection with soliciting Mr. Grant's purchase of shares of Oksana International in violation of Ind. Code § 23-19-5-1.[8]  Indiana Code § 23-19-5-1 provides that:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
> (1)      to employ a device, scheme, or artifice to defraud;
> (2)      to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; or
> (3)      to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

The first issue the Court must consider is whether Mr. Grant's purchase of shares of Oksana International stock constitutes the purchase of a security to trigger the antifraud provision of Ind. Code § 23-19-5-1.[9]  The "economic reality" test established by *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852 (1975), "embodies the essential attributes that run through all the Court's decisions defining a security."  A true security transaction involves (1) an investment in a common venture, (2) premised upon a reasonable expectation of profits, (3) to be derived from the entrepreneurial or managerial efforts of others.  *Id.*  The sale of the Oksana International shares to Mr. Grant satisfies these three elements.  Mr. Grant was investing in a common venture in which he and Mr. Van Natta were to be the members of Oksana International and, based on the email submitted into evidence, Mr. Van Natta stated an expectation that he and Mr. Grant would make a profit from the purchase of Jamaican real estate based on their entrepreneurial and managerial efforts.  Moreover, in Indiana, the sale of a business via the shares of a corporation falls under the requirements of the antifraud provision of

---

[8] Although Mr. Grant cites to Ind. Code § 23-2-1-12 in his Motion for Summary Judgment, that section of Indiana code was repealed in 2008.  Mr. Grant cited to the controlling section in his Complaint, Ind. Code § 23-19-5-1.

[9] Plaintiff cites to Ind. Code § 23-2-1-1(d) as a basis for Mr. Van Natta's liability; however, that section of the Indiana Securities Act is not a section of code which can be violated, but rather is the definition of "fraud" used throughout the Securities Act.  Additionally, Ind. Code § 23-2-1-1(d) was repealed in 2008 and has been superseded by Ind. Code § 23-19-12(9).  In any event, Ind. Code § 23-19-1-2(9), the definition of "fraud" as used throughout the Indiana Securities Act, cannot serve as a basis for liability.

the Indiana Securities Act. *Wisconics Eng'gs, Inc. v. Fisher*, 466 N.E.2d 745, 761 (Ind. Ct. App.

1984). Thus, Ind. Code § 23-19-5-1 applied to the offer, sale, and purchase of shares of Oksana

International stock between Mr. Van Natta and Mr. Grant.

The undisputed material facts show that Mr. Van Natta made a representation to Mr.

Grant regarding the assets of Oksana International prior to Mr. Grant's investment in Oksana

International and upon which Mr. Grant relied in determining whether to purchase those shares.

Specifically, "Mr. Van Natta represented to [Mr. Grant] throughout June and July 2010 that

[Oksana International] had recently purchased and now owned an internet dating service website,

www.oksanalove.com." Grant Aff. ¶¶ 10, 13. After Mr. Grant purchased shares of Oksana

International, he learned that the dating service website, www.oksanalove.com, was not owned

by Oksana International. *Id.* ¶ 26.

The Court must consider whether the misrepresentation is material before it can

determine whether a misstatement was unlawful pursuant to Ind. Code § 23-19-5-1. "A

statement or omission is considered material where a reasonable investor would have considered

it important in making his investment decision." *Pippenger v. McQuik's Oilube, Inc.*, 854 F.

Supp. 1411, 1425 (S.D. Ind. 1994) (citation omitted). The materiality requirement under the

Indiana antifraud provisions are substantially similar to those under federal securities law. "Only

when the disclosures or omissions are so clearly unimportant that reasonable minds could not

differ should the ultimate issue of materiality be decided as a matter of law." *Id.* (citing *TSC

Indus. v. Northway, Inc.*, 426 U.S. 438, 339 (1976) (analyzing federal securities Rule 10b-5)).

The misrepresentation that Oksana International owned an internet dating website (when it did

not) is not a misrepresentation upon which the Court can make a materiality determination as a

matter of law. The fact finder may determine that a reasonable investor would consider this

misstatement material in making an investment decision, and it may not.  The Court cannot say that this misstatement was so clearly unimportant that reasonable minds cannot differ as to the materiality of this fact considered by a reasonable investor.   Whether Mr. Van Natta's misrepresentation that Oksana International owned www.oksanalove.com constituted a *material* misrepresentation is a question of fact for the fact finder to determine following a trial.  Thus, a genuine issue of material fact exists that precludes the entry of summary judgment.

The Court DENIES summary judgment with respect to Plaintiff's claim for violation of Indiana Securities Law in Count VIII of the Complaint.

### E.   Breach of Contract.

Plaintiff seeks to enforce an employment contract that he alleges was entered into between Mr. Grant and Mr. Van Natta.  A genuine issue of material fact exists that prevents the entry of summary judgment with respect to Plaintiff's claim for breach of contract.  Although Mr. Grant alleges that he "entered into an Employment Agreement with Van Natta by which Van Natta agreed to pay Grant $25,000.00 per year 'guaranteed by Van Natta Asset Management, as well as a draw in the amount of $3,000.00 a month from Oksana," [Dkt. 114 at 5], the Employment Contract on its face does not appear to be between Mr. Grant and Mr. Van Natta personally.  In fact, the Employment Contract does not specifically identify the parties to be bound.

The top of the Employment Agreement states "Chief Operations Officer – Oksana International, LLC," which suggests that Mr. Grant was to be acting as the Chief Operations Officer of Oksana International, LLC.  [*See* Dkt. 114 at Ex. E.]  Moreover, the Employment Agreement references a "company policy" with respect to the date on which payroll payments would be made as well as the manner in which profit sharing arrangements would be handled.

*Id.*  Similarly, paragraph 8 of the Employment Agreement states that a "[c]ompany credit card shall be issued within 90 days of acceptance."  *Id.*  Finally, the Employment Agreement indicates that it is an "offer" that is "made" and "approved" by Todd A Van Natta, not that the agreement is with Mr. Van Natta himself.  Viewing the evidence and reasonable inferences to be drawn therefrom in the non-moving party's favor, there are genuine issues of material fact as to which of the Defendants, if any, entered into the Employment Agreement with Mr. Grant.  For this reason, the Court DENIES Plaintiff's Motion for Summary Judgment as to Count III for Breach of Contract.

Even if the parties were clearly identified in the Employment Agreement, under Indiana law, a valid and enforceable employment contract must contain the four following elements: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee is to receive.  *Firestone v. Standard Mgmt. Corp.,* No. 1:04-cv-1223-DFH-TAB, 2005 WL 1606955, at *5 (S.D. Ind. July 5, 2005)*; Majd Pour v. Basic Am. Med., Inc.,* 512 N.E.2d 435, 439 (Ind. Ct. App. 1987).  The Employment Agreement does not contain three of the four essential elements required under Indiana law to constitute a valid and enforceable employment contract.

First, the Employment Contract does not provide any place of employment for Mr. Grant to perform his work.

Second, the Employment Contract contains no period of employment.  Paragraph 3 of the Employment Agreement provides for a "[b]ase salary of twenty five thousand dollars, ($25,000) guaranteed by Van Natta Asset Management, LLC payable in single payments monthly the first (1st) day of every month."  [Dkt. 114 at Ex. E, p. 2 at ¶ 3.]  However, that paragraph also states that "[s]uch salary is not limited by a time scope."  No other provision of the Employment

Agreement provides for any period of employment that would contradict the express lack of time scope in paragraph 3.

Third, the Employment Contract is devoid of any explanation as to the nature of services that Mr. Grant is to provide in exchange for the salary, company draw, and benefits described in the Employment Contract.   Although the Employment Contract states at the top "Chief Operations Officer – Oksana International, LLC," it does not state that Mr. Grant is providing "Chief Operations Officer" services or exactly what those services were.[10]   As a result, the Employment Agreement does not satisfy the requirements of Indiana law and cannot be enforced as written.  The Court DENIES Plaintiff's Motion for Summary Judgment with respect to Count III of the Complaint for Breach of Contract for this additional reason.

## CONCLUSION

For the foregoing reasons, the Court DENIES summary judgment as requested by Plaintiff.

Plaintiff's claims for Actual Fraud, Constructive Fraud, and Deception fail to satisfy the legal standards for summary judgment ruling.  Mr. Grant failed to submit admissible evidence of the alleged misrepresentations upon which he reasonably relied to his detriment.  Mr. Grant also failed to prove that he diligently safeguarding his interests and thus, had a right to rely on Mr. Van Natta's alleged misrepresentations.   Finally, Mr. Grant's claim for Deception failed to identify an admissible written statement by Mr. Van Natta that was false or misleading and made with the intent to obtain Mr. Grant's property.

Plaintiff's claim for Breach of Fiduciary Duty failed to satisfy the legal standard for summary judgment because Mr. Grant did not submit any evidence of self-dealing by Mr. Van

---

[10]  The Employment Contract attached as Exhibit E does contain the last essential element, "the compensation the employee is to receive" in paragraphs 3 and 4; however, this element alone is insufficient to enforce the Employment Contract under Indiana law.

Natta after Mr. Grant became a 50% shareholder in Oksana International.  Moreover, Mr. Grant provided no admissible evidence to the Court that his $200,000 investment in Oksana International was misappropriated or treated inappropriately by Mr. Van Natta.

Although Mr. Grant proved a technical violation of Ind. Code § 23-18-4-8(c) for failing to deal fairly, honestly, and openly with Mr. Grant about the operations of Oksana International, no monetary damages are available pursuant to the statute.  Even so, Mr. Grant failed to prove any damages proximately caused by this technical breach.  Finally, Mr. Grant has not sought any injunctive relief related to Mr. Van Natta's obligations under Ind. Code § 23-18-4-8(c).

Mr. Grant's request for accounting fails as a matter of law because the corporate defendants have been defaulted and Mr. Grant has an adequate remedy at law.  Because a return of Mr. Grant's $200,000 investment would make him whole, Mr. Grant is not entitled to an accounting as against Mr. Van Natta based on the facts provided to the Court.

Mr. Grant's claims for Tortuous and Criminal Conversion fail because Mr. Grant has not shown this Court that the money he paid as an investment in Oksana International was capable of being identified as special chattel.  Mr. Grant has shown the opposite – that his payment of $200,000 was to be used as an investment in a company.  Based on these facts presented, Mr. Grant's claims for Tortuous and Criminal Conversion fail as a matter of law.

Plaintiff's claim for violation of Indiana's Securities Law fails because Mr. Grant did not prove by undisputed facts that the sole admissible misrepresentation made by Mr. Van Natta was material, i.e., that a reasonable investor would have considered this misrepresentation important when making his investment decision.  The Court cannot find that this fact is so clearly unimportant that reasonable minds cannot differ as to its materiality.  As a result, this issue is left to the determination of the fact finder.

Finally, Plaintiff's claim for Breach of Contract related to the Employment Agreement fails as a matter of law because the Employment Contract does not contain the required elements under Indiana law.  The contract presented to the Court, as a matter of law, does not contain each element required by Indiana law to be an enforceable employment contract.  As a result, Mr. Grant cannot successfully make a claim for breach of the Employment Contract based on the contract presented to the Court.

For these reasons and each of them, the Court **DENIES** Plaintiff's Motion for Summary Judgment.


Date:   02/07/2013

Distribution:

MARK GRANT
32 Crolley Lane
White, GA 30184

TODD A. VAN NATTA
Jail ID T00649787
MJ 2P
MARION COUNTY JAIL
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana